GARDNER WINSLOW AND BETSEY BRUCE *v.* DANIEL FRASER.

### Contract.

A. and B. being tenants in common of a saw mill, of which the former had the management, A. contracted to saw lumber for the defendant for two years, at certain prices. Before the expiration of that time, A. died, and his share in the mill passed, in the settlement of his estate, to his widow, who, with B., sawed lumber for the defendant during the remainder of the two years. *Held,* that A.'s contract was not binding upon the other owner, or upon his widow after his death, and that they had a right to recover of the defendant for the sawing done by them after that time, at the usual price for such work, without regard to A.'s contract.

The plaintiffs, being A.'s widow and B., after A.'s death, on being informed of the contract between A. and the defendant, told the latter that they would saw the lumber, drawn by him to the mill before A.'s death, at the prices stipulated in his contract with A. *Held,* that this was a ratification of A.'s contract only so far as regarded the lumber drawn to the mill before A.'s death, and that it did not extend to lumber drawn after that time.

BOOK ACCOUNT. The following facts appeared from the auditor's report :

In 1853, the defendant made a contract with Harvey Bruce, who, with the plaintiff Winslow, owned the saw mill where the work charged in the plaintiff's account was done. By this contract, Bruce, who had the entire management and control of the mill, agreed, for the period of two years, to saw hemlock and basswood lumber for the defendant, at certain stipulated prices. During the

Winslow et al. *v.* Fraser.

life of Harvey Bruce, lumber was sawed by him for the defendant under this contract. Harvey Bruce died in July, 1854, and his interest in the mill, being three-fourths thereof, passed to his widow, Betesy Bruce, one of the plaintiffs, who thereafter owned it with the other plaintiff, Winslow. After the death of her husband, the mill was under the control of Betsey Bruce, and was carried on by her son and other persons employed by her.

When Harvey Bruce died, there was a quantity of unsawed logs in the mill yard, which had been drawn there by the defendant, to be sawed under his contract with Harvey Bruce, which logs were sawed by the plaintiffs, and for sawing which they charged in their account the prices agreed upon between the defendant and Harvey Bruce, adding thereto a charge of twenty-five cents per thousand feet, because the sawing was not paid for within three months after it was done. The auditor found that it was the custom of the mill to charge this extra twenty-five cents per thousand feet, for all work not paid for within three months. The defendant claimed that the whole account of the plaintiffs for sawing, should be charged at the prices agreed upon between him and Harvey Bruce.

It further appeared that after Harvey Bruce's death, the defendant informed the plaintiffs of the contract between him and Harvey Bruce, and that the plaintiffs then said to him that they would saw the lumber then in the yard, at the contract prices. It appeared that in the spring of 1855, when the lumber drawn in after Harvey Bruce's death was sawed, the plaintiffs advanced the price of sawing at the mill, and these advanced prices were charged in their account upon all the lumber sawed by them for the defendant, except that drawn to the mill before Harvey Bruce's death. The auditor found that these prices were the usual prices charged for such sawing at the time the work was done, but he did not find that the plaintiffs gave the defendant any notice of the advance in their prices, or that they charged twenty-five cents per thousand feet additional for non-payment within three months.

The county court, at the May Term, 1857,—Underwood, J., presiding,— rendered judgment upon the report, that the plaintiffs recover the amount of their account as charged, except the charge of twenty-five cents additional for non-payment within three months, to which the defendant excepted.

*Washburn & Marsh*, for the defendant.

*Converse & French*, for the plaintiffs.

The opinion of the court was delivered by

POLAND, J.   The only question in this case is, as to the price the plaintiffs were entitled to charge for the sawing charged in their account.   The defendant claims that they could only charge the prices fixed by the contract with Harvey Bruce, while he was a part owner of the mill, with the plaintiff Winslow, in 1853.

The auditor reports that the defendant did make a contract with Harvey Bruce as to the price of sawing, which was to continue two years.

Bruce and Winslow were then joint owners of the mill, but it does not appear that any other relation existed between them, than that of ordinary tenants in common, or that Bruce had any authority to enter into contracts for sawing in the future, that would bind Winslow.

Harvey Bruce died in 1854, and his part of the mill became the property of the plaintiff Betsey Bruce, his widow; whether it was set to her as dower out of his estate, or whether she was a direct purchaser from his administrator, does not appear, and is not material; in either case, she held as a grantee, and was no more bound by any of the contracts for sawing, made by her husband in his life time, than any other grantee of his portion of the mill. She was in no sense his personal representative, so as to be bound by his contracts.

A small portion of the defendant's logs were at the mill when Harvey Bruce died, but most of them were drawn afterwards.

Under this state of facts, we think the plaintiffs were in no manner bound by the contract made by Harvey Bruce, unless it was made known to them, and they assented to do the defendant's sawing under it.

It does not appear that either of the plaintiffs had any knowledge of the contract made between the defendant and Harvey Bruce, until after the death of Bruce, when the defendant did inform the plaintiffs of the contract, and then either the plaintiff Winslow, or Mrs. Bruce's son, who carried on the mill, said to the

defendant, that they would saw what lumber the defendant then had at the mill, at the prices of that contract, and for such sawing the plaintiffs have only charged those prices.

This language, we think, can not be fairly construed into an assent to perform that contract beyond the lumber in the mill, and the defendant could not reasonably understand it to extend to lumber drawn after that time. Assenting to the contract in this restricted form, was virtually refusing to assent to it to any greater extent.

The plaintiffs, then, for the subsequent sawing, were entitled to charge, as if there was no contract, what it was reasonably worth; and the prices charged and paid at this mill, and other mills in the vicinity, were evidence of it. Indeed, it does not appear to have been questioned but that the plaintiffs were entitled to those prices unless they were bound by Harvey Bruce's contract.

The forfeiture of twenty-five cents per thousand for delay of payment for more than three months, which the plaintiffs claimed by the custom of this and other mills, was disallowed by the county court, and no exception by the plaintiffs, so that it is not properly before us. But clearly, no such forfeiture could be enforced unless known and assented to by the defendant.

The judgment of the county court is affirmed.