## Davis & Rankin, Appellants, v. E. C. Campbell.

**Contract: Material Alterations.** Defendant signed a subscription paper. Others signed a subscription paper for the same purpose. The two papers were identical, except that the last had the words "the amount set opposite our names." The signatures to the last were detached and appended to the first. *Held*, the quoted words were surplussage. The two papers were one contract. There was no material alteration of the first paper.

**Subscription: REVOCATION.** It is no defense that a subscription was rescinded by the signer after the acceptance but before anything was done or expended under it. *Scale v. Beed*, 52 Iowa, 308, and *Lodge v. Farnham*, 11 Pac. Rep., 592, *distinguished*.

**SAME.** Neither are false representations that a creamery would yield a stated profit and that its stock would be of great value.

**Practice.** Pleadings, instructions, verdict, and special findings, are part of the record and need not be preserved by bill of exceptions.

*Appeal from Harrison District Court.*—Hon. Scott M. Ladd, Judge.

SATURDAY, JANUARY 26, 1895.

Action upon a written agreement. Verdict and judgment for defendant. Plaintiffs appeal.

*L. R. Bolter & Sons* for appellants.

*S. H. Cochran* for appellee.

Kinne, J.—I. The petition alleges that the defendant entered into a written contract with J. M. Brent & Co. by the terms of which he agreed to pay them one hundred dollars; that, after said contract had been entered into, said J. M. Brent & Co. assigned their interest therein to plaintiffs, who thereafter fully complied with the terms of said contract; that plaintiffs own and hold said contract, that it was signed by forty-eight persons; and that all have paid their part except defendant and nine others; aver that defendant has failed to comply with said contract. The contract is very long, and cannot be fully set out. It provides, in substance, that J. M. Brent & Co., party of the first part, agree with the undersigned, subscribers hereto, party of the second part, to build, erect, complete, and equip, for said party of the second part, a creamery at or near Persia, Iowa. The contract then sets forth the dimensions and style of the building, the amount and kind of machinery it shall contain, the number of tubs, amount of salt, etc., to be furnished under the contract, and further provides that the second parties shall furnish land for the buildings, and Brent & Co. agree to erect and complete and equip the building for four thousand eight hundred dollars, payable in cash. It is also provided: "We, the subscribers hereto, party of the second part, agree to pay the above amount for said factory when completed." The contract is signed by J. M. Brent & Co., per J. M. Briggs, agent, party of the first part, and this is followed by the following headings: "Names of Subscribers," "Number of Shares," "Amount Stock after Incorporation." Forty-nine names appear under this heading (including the defendant's) for one share each, of one hundred dollars. To this petition defendant answered, in substance admitting that he signed the

contract sued upon, but averring that after he had signed it, it had been materially changed and altered by adding "$4,800," "$100," and the following, "J. M. Brent & Co., per M. J. Briggs, Agent," and by adding to said paper all of the names of the signers thereto, from and including the name of Len Stahlnecker, to and including that of H. L. Howard; that the contract was abandoned, and the creamery thereafter erected under another contract, and fully paid for. In a reply, plaintiffs denied that the figures had been changed as alleged, and admitted that the names from Stahlnecker to Howard, inclusive, had been attached to the instrument in suit since it was signed and delivered, but say same was not done with their authority, knowledge, or consent, and was not done with fraudulent intent on the part of any one, and in no way prejudiced the defendant; that the subscription contract between Brent & Co. and defendant and others was circulated for signature in two separate sheets, one of which sheets was signed by defendant and others, and is the one in suit; that the other sheet, being substantially the same as the one in suit, was signed by the persons named Stahlnecker to Howard, inclusive, and, for convenience, the names last above mentioned were detached from said sheet, and pasted at the bottom of the instrument in suit, and just below the names of defendant and some thirty-six others, who signed the instrument in suit in common with him, each placing opposite his name the figures "100." The jury returned certain special findings, which will hereafter be considered, and found a general verdict for the defendant. Plaintiffs moved in arrest of judgment on the verdict, and for judgment in their favor on the special findings, which motion was overruled. Defendant moved for judgment on the verdict. The court entered a judgment on the verdict.

II.   The evidence is not before us, and it is contended by the appellee that it was not made of record in the court below.   In our view of this case, it was not necessary to bring the evidence up on this appeal; and, a consideration of the evidence being unnecessary to a determination of the questions raised, it is immaterial whether the evidence was properly preserved and made of record or not.   Under these circumstances, we can only pass upon questions the determination of which does not involve an examination of the evidence.

As will be observed, every question we pass upon on this appeal is determined from the pleadings, the instructions of the court, the special findings of the jury, and their general verdict.   These are all matters of record, without the aid of a bill of exceptions; hence it matters not whether such a bill was settled and filed. *Allison v. Jack,* 76 Iowa, 208, 40 N. W. Rep. 811.

III.   It appears from the pleadings that the plaintiffs declared upon a written contract and averred full performance upon their part, and that defendant had refused to pay.   Defendant admits signing the contract, but claimed that it had been materially altered after he had signed it.   The reply admitted that a piece of paper containing certain names thereon had been detached from a duplicate subscription list, and attached to the bottom of the one in suit, and denied the making of any change.   The court instructed the jury that the creamery building, as shown by the evidence, had been constructed "under the contract and in accordance therewith."   This instruction is not complained of, and is that far the law of the case; and it will be assumed, in the absence of evidence to the contrary, that the evidence supported the fact stated in the instruction.   The jury, under direction of the court, found specially that the sum "$100" was not inserted in the body of the contract after defendant had signed

it; that the sum "4,800" was not written in the contract after defendant had signed it; that the figures "$100" were written opposite defendant's name at or prior to the time he signed the instrument; that the names from Stahlnecker to Howard, inclusive, were detached from another paper or contract, and attached to the instrument in suit by plaintiffs or Brent & Co.; that the paper from which said names were detached differed from the one in suit by having the words "the amount set opposite our names" inserted therein. They also returned a general verdict for defendant. The court gave the following instructions, which were duly excepted to, viz.: "Seventh. If you find from the evidence that, after Campbell signed his name to that instrument, the plaintiff, or his assignor, detached from another contract the names of Stahlnecker to Howard, inclusive, and attached them to the instrument in suit, and that this was done without the knowledge or consent of defendant, and without the consent of said parties, Stahlnecker and others, this would invalidate the instrument, and no recovery could be had thereon. Eighth. If you find that the '4,800' and the '100' were in the body of the instrument when Campbell signed same, and that the '100' was placed opposite his name at or prior to the time he signed it, then you will find for the plaintiff on these issues. So, too, if you find that the names from Stahlnecker to Howard, inclusive, were detached from another paper, and attached to the instrument in suit by the consent of all the parties whose names were so detached from the other paper in controversy, then you will find for the plaintiff upon this point. And if you so find, and that no alteration has been made in the instrument as above mentioned, then you will find and return a verdict for the plaintiff. If, however, you find that any alteration has been made as above mentioned, or that the

names referred to were detached from the other paper, and added to the instrument in controversy, without the consent of the persons whose names were so added, then you will find for the defendant." From the foregoing it is clear that the only questions tried and submitted to the jury were, first, whether the contract had been changed after defendant signed it; and whether the names from Stahlnecker to Howard, inclusive, had been detached from another contract, and attached to the instrument in suit; and whether the instrument upon which the names from Stahlnecker to Howard appeared was worded the same as the contract sued upon. It will be observed that the jury specially found that the instrument had not been changed after defendant had signed it, but did find that the names from Stahlnecker to Howard, inclusive, had been detached from another paper, and attached to the contract sued upon, and that the two papers were alike except in this: that the Stahlnecker paper contained the following clause, not found in the one sued upon, viz.: "the amount set opposite our names." Did the court err in giving the seventh and eighth instructions, and in refusing to enter a judgment upon the special findings, notwithstanding the general verdict, and in entering judgment upon the general verdict? These questions may all be considered together. We think that in all of these respects the court erred.

The special findings eliminated every controverted question from the case except two, viz.: Was the instrument in suit invalidated by the attaching thereto of the names from Stahlnecker to Howard, inclusive? Second. Did the words "the amount set opposite our names," in the Stahlnecker paper, have the effect of making it a paper or contract separate and distinct

from the contract sued upon, or were both papers a part of one contract, being virtually duplicates of each other? We think that the additional words in the Stahlnecker paper in no way affected the liability of the parties to the contract sued upon. The Stahlnecker contract would have been as binding and obligatory upon those who signed it in the absence of the provision quoted as with it. It was mere surplusage, having no effect upon the contract, the latter being complete without the words referred to. In every other respect the body of these two papers was identical. They were prepared for the accomplishment of the same object. They were, it seems to us, in fact but duplicates, and therefore, taken together, constituted but a single contract. In this view, it is immaterial whether all of the forty-eight or forty-nine signers signed one of these papers, or, as in this case, a part of them signed one paper and a part of them the other, as, taken together, they constituted one and the same contract. How, then, can it be said that the detaching of the names from one paper, and attaching them to the other paper, just like it, and being a part of the same contract, would operate to invalidate the latter, and release the signers thereto from liability? In legal effect, the two papers constituted but one contract, and the right of recovery is not to be measured by the number of papers, and who signed each of them, but by the contract itself, which as to both papers was the same, and pertained to the same subject-matter. We think the court erred in its instructions touching this matter, and that the liability of the defendant was not affected by the attaching of the names from Stahlnecker to Howard, inclusive, to the paper sued upon. *Gibbons v. Grinsel* (Wis.), 48 N. W. Rep. 255.

Counsel for appellee refers to cases in this and other states holding that the alteration of a contract

invalidates it.   The jury found that there was no alter-
ation in the contract sued upon, unless the attaching
the names constituted one.   This, we say, was not an
alteration, and hence the cases cited are not applicable.
An "alteration" is an act done upon a written instru-
ment which, without destroying its identity, changes
its language or meaning.   Black, Law Dict.   The addi-
tion of these names, under the circumstances disclosed,
was not an alteration of the contract sued upon.

IV.   In the light of what we have said, it is appar-
ent that, on every material fact in the case, the jury
found specially in favor of the plaintiffs, and these
findings were absolutely inconsistent with the general
verdict.   Such being the case, the court should have
rendered judgment upon the special findings against
the defendant.

V.   Defendant appeals from certain rulings of the
court against him.   He pleaded that, before the plaint-
iffs or their assignees had expended any money or per-
formed any labor under the contract, he notified
them that he had canceled his subscription.

This was stricken out on motion, and this ruling
is assigned as error.   The claim is that, if defendant
rescinded the contract, then no action could be main-
tained thereon against him, but the action must be for
damages for failure to perform.   That such may be the
rule in certain cases when an article is contracted for
which is to be manufactured may be conceded (*Scale
Co. v. Beed,* 52 Iowa, 308, 3 N. W. Rep. 96); but we do
not think that rule applies to a case like that at bar.
This was not an agreement for the purchase of personal
property.   It was a subscription to aid in the erection
of a creamery, and the contract provided that the sub-
scribers might organize a corporation as soon as the
full amount of stock had been subscribed, and shares
of stock should be issued to subscribers to the extent

of their paid-up stock. It is not alleged that the rescission was made prior to the acceptance of the contract by Brent & Co., or their assignees. It is not the case of a subscription to a charitable object, which is a mere offer, revocable at the will of the subscriber at any time before it is accepted by the promisee. *Grand Lodge v. Farnham*, 70 Cal. 158, 11 Pac. Rep. 592. For all that appears in this court, the contract had become in all respects a binding obligation upon the defendant, and irrevocable, prior to the attempted rescission, There was therefore no error in the ruling.

VI. Defendant also complains of the action of the court in sustaining a demurrer to the third division of his answer. In this count certain representations are alleged to have been made by the person procuring the subscription, to the effect that the profits to subscribers from the operation of the creamery would be a certain sum, and the stock of great value. Defendant says he believed these representations, and that, by reason thereof, he was induced to subscribe for the stock; that they were false, and known to be so by the person who made them at the time they were made. The demurrer attacked this division as stating no defense, and it was properly sustained. The statements were mere matters of opinion. It was not a case of representation as to the condition and earnings of an existing corporation, as to which the one making the representations might be supposed to have accurate knowledge, and which one dealing with the corporation might well rely upon. *Hubbard v. Weare*, 79 Iowa, 682, 44 N. W. Rep. 915. The alleged fraudulent statements in the case at bar consisted in mere speculations as to what the corporation would earn. We know of no rule of law which, in such a case, holds that mere expressions of opinion as to future earnings

of a corporation to be formed can be relied upon as a defense to an action upon a stock subscription.

On plaintiff's appeal the case is reversed, and remanded to the District Court, for the entry of a judgment in favor of plaintiffs in accordance with the views herein expressed. On defendant's appeal the judgment below is *affirmed.*