*W. O. Childs*, for the defendant.
*H. J. Jaquith*, for the plaintiff.

---

### AUGUSTUS B. MARTIN & others *vs.* WILLIAM MELES & others.

Suffolk. March 20, 1901. — May 23, 1901.

Present: HOLMES, C. J., MORTON, LATHROP, & BARKER, JJ.

*Contract*, Consideration, Damages after notice by defendant of intended breach, Parties.

The defendants, being leather manufacturers, signed the following agreement which also was signed by nine other leather manufacturers: " We, the undersigned, manufacturers of leather, promise to contribute the sum of $500 each, and such additional sums as a committee appointed by the Massachusetts Morocco Manufacturers Association may require; in no case shall the committee demand from any manufacturer or firm a total of subscriptions to exceed the sum of $2,000, such sum to be employed for legal and other expenses under the direction of the committee in defending and protecting our interests against any demands or suits growing out of Letters Patent for Chrome Tanning, and in case of suit against any of us the committee shall take charge thereof and apply as much of the fund as may be needed to the expense of the same." The plaintiffs were the committee referred to in the agreement and subscribers to it. They did some work before the agreement and after its execution did more, undertook the defence of suits and levied assessments, which were paid, the defendants paying $750. Thereafter the defendants' firm was dissolved and went out of business, and the defendants notified the plaintiffs thereof. Later upon a demand for the rest of their subscription the defendants refused to pay it. *Held*, that the committee by signing the agreement promised not only to accept the subscribers' money but to perform the duties named, and that either this promise or the subsequent work of the committee invited by the agreement was a good consideration for the defendants' subscription, the court inclining to the view, that the plaintiffs' promise alone was the consideration, but declaring that, if the acts and

not the promise constituted the consideration, the defendants' promise became binding upon the first substantial act done by the committee, and, that the defendants' promise was entire and not a series of promises to pay successive sums upon successive steps by the committee. *Held, also,* on the question of damages, that the defendants did not notify the plaintiffs to stop performance until the defendants' liability had been fixed by a demand under the contract, and, even if such a notice had been given in advance, the plaintiffs would have had the right to go on with this contract where there was a common interest in the performance and where the part done and that which remained to be done appeared to be largely interdependent.

*Semble,* that, where a defendant has announced his intention of breaking a contract and ordered the plaintiff to stop work under it, in cases where the continuance of the work would be merely a useless enhancement of damages, the plaintiff cannot recover damages occasioned by his continuing work after the order to stop.

Comment by HOLMES, C. J., on the fact that the repudiation of the notion, that the subscription of others than the plaintiff might be a consideration for the subscription of the defendant, seems not to have been extended to agreements of creditors to accept a composition.

A binding subscription to pay such sums as a committee appointed by a certain association may require is a contract made with such a committee subsequently appointed.

HOLMES, C. J. This is an action to recover the contribution promised by the following paper, which was signed by the defendants and others: " January 21, 1896, We, the undersigned, manufacturers of leather, promise to contribute the sum of five hundred (500) dollars each, and such additional sums as a committee appointed by the Massachusetts Morocco Manufacturers Association may require ; in no case shall the committee demand from any manufacturer or firm a total of subscriptions to exceed the sum of two thousand (2,000) dollars, such sum to be employed for legal and other expenses under the direction of the committee, in defending and protecting our interests against any demands or suits growing out of Letters Patent for Chrome Tanning, and in case of suit against any of us the committee shall take charge thereof and apply as much of the fund as may be needed to the expense of the same."

The plaintiffs are the committee referred to in the agreement, and subscribers to it. They were appointed and did some work before the date of the agreement, and then prepared the agreement which was signed by nine members of the association mentioned, and by the defendants, who were not members. They went on with their work, undertook the defence of suits, and levied assessments which were paid, the defendants having

paid $750. In November, 1896, the defendants' firm was dissolved, and two members of it, Meles and Auerbach, ceased tanning leather. The defendants notified the plaintiffs of the dissolution, and on June 23, 1897, upon demand for the rest of their subscription refused to pay the same. The main questions insisted upon, raised by demurrer and by various exceptions, are whether the defendants' promise is to be regarded as entire and as supported by a sufficient consideration.

It will be observed that this is not a subscription to a charity. It is a business agreement for purposes in which the parties had a common interest, and in which the defendants still had an interest after going out of business, as they still were liable to be sued. It contemplates the undertaking of active and more or less arduous duties by the committee, and the making of expenditures and incurring of liabilities on the faith of it. The committee by signing the agreement promised by implication not only to accept the subscribers' money but to perform those duties. It is a mistaken construction to say that their promise, or indeed their obligation, arose only as the promise of the subscribers was performed by payments of money.

If then the committee's promise should be regarded as the consideration, as in *Ladies' Collegiate Institute* v. *French,* 16 Gray, 196, 201, see *Maine Central Institute* v. *Haskell,* 75 Maine, 140, 144, its sufficiency hardly would be open to the objection which has been urged against the doctrine of that case, that the promise of trustees to apply the funds received for a mere benevolence to the purposes of the trust imposes no new burden upon them. *Johnson* v. *Otterbein University,* 41 Ohio St. 527, 531. See *Presbyterian Church of Albany* v. *Cooper,* 112 N. Y. 517. Neither would it raise the question whether the promise to receive a gift was a consideration for a promise to make one. The most serious doubt is whether the promise of the committee purports to be the consideration for the subscriptions by a true interpretation of the contract.

In the later Massachusetts cases more weight has been laid on the incurring of other liabilities and making expenditures on the faith of the defendant's promise than on the counter-promise of the plaintiff. *Cottage Street Church* v. *Kendall,* 121 Mass. 528. *Sherwin* v. *Fletcher,* 168 Mass. 413. Of course the mere

fact that a promisee relies upon a promise made without other consideration does not impart validity to what before was void. *Bragg* v. *Danielson*, 141 Mass. 195, 196. There must be some ground for saying that the acts done in reliance upon the promise were contemplated by the form of the transaction either impliedly or in terms as the conventional inducement, motive and equivalent for the promise. But courts have gone very great lengths in discovering the implication of such an equivalence, sometimes perhaps even having found it in matters which would seem to be no more than conditions or natural consequences of the promise. There is the strongest reason for interpreting a business agreement in the sense which will give it a legal support, and such agreements have been so interpreted. *Sherwin* v. *Fletcher, ubi supra.*

What we have said justifies, in our opinion, the finding of a consideration either in the promise or in the subsequent acts of the committee, and it may be questioned whether a nicer interpretation of the contract for the purpose of deciding which of the two was the true one is necessary. It is true that it is urged that the acts of the committee would have been done whether the defendants had promised or not, and therefore lose their competence as consideration because they cannot be said to have been done in reliance upon the promise. But that is a speculation upon which courts do not enter. When an act has been done, to the knowledge of another party, which purports expressly to invite certain conduct on his part, and that conduct on his part follows, it is only under exceptional and peculiar circumstances that it will be inquired how far the act in truth was the motive for the conduct, whether in case of consideration, *Williams* v. *Carwardine*, 4 B. & Ad. 621, see *Maine Central Institute* v. *Haskell*, 75 Maine, 140, 145, or of fraud. *Windram* v. *French*, 151 Mass. 547, 553. In *Cottage Street Church* v. *Kendall*, 121 Mass. 528, the form of the finding in terms excluded subsequent acts as consideration, and therefore it did not appear whether the facts were such that reliance upon the promise would be presumed. In *Bridgewater Academy* v. *Gilbert*, 2 Pick. 579, the point was that merely signing a subscription paper without more did not invite expenditure on the faith of it. See *Amherst Academy* v. *Cowls*, 6 Pick. 427, 438; *Ives* v. *Sterling*,

6 Met. 310, 316. In this case the paper indisputably invited the committee to proceed.

A more serious difficulty if the acts are the consideration is that it seems to lead to the dilemma that either all acts to be done by the committee must be accomplished before the consideration is furnished, or else that the defendant's promise is to be taken distributively and divided up into distinct promises to pay successive sums as successive steps of the committee may make further payments necessary and may furnish consideration for requiring them. The last view is artificial and may be laid on one side. In the most noticeable cases where a man has been held entitled to stop before he has finished his payments, the ground has not been the divisibility of his undertaking but the absence of consideration, which required the court to leave things where it found them. *In re Hudson*, 54 L. J. Ch. 811. *Presbyterian Church of Albany* v. *Cooper*, 112 N. Y. 517. As against the former view, if necessary, we should assume that the first substantial act done by the committee was all that was required in the way of acts to found the defendants' obligation. See *Amherst Academy* v. *Cowls*, 6 Pick. 427, 438. But if that were true, it would follow that as to the future conduct of the committee their promise not their performance was the consideration, and when we have got as far as that, it may be doubted whether it is not simpler and more reasonable to set the defendants' promise against the plaintiffs' promise alone. We are inclined to this view, but do not deem a more definitive decision necessary, as we are clearly of opinion that, one way or the other, the defendants must pay.

What has been said pretty nearly disposes of a subordinate point raised by the defendants. It is argued that, by notice pending performance that they would not go on with the contract, the defendants, even if they incurred a liability to damages, put an end to the right of the plaintiffs to go on and to recover further assessments, as in the case where an order for work is countermanded at the moment when performance is about to begin under the contract, *Davis* v. *Bronson*, 2 No. Dak. 300, or when at a later moment the plaintiff was directed to stop, *Clark* v. *Marsiglia*, 1 Den. 317, followed by many later cases in this country. See *Collins* v. *Delaporte*, 115 Mass. 159, 162.

We assume that these decisions are right in cases where the continuance of work by the plaintiff would be merely a useless enhancement of damages. But we are of opinion that they do not apply. In the first place it does not appear that such a notice was given. The first definite notice and the first breach was a refusal to pay on demand. At that time the liability was fixed, and the damages were the sum demanded.

In the next place if a definite notice had been given by the defendants in advance that they would not pay, whatever rights it might have given the plaintiffs at their election, *Ballou* v. *Billings*, 136 Mass. 307, it would not have been a breach of the contract, *Daniels* v. *Newton*, 114 Mass. 530, and it would not have ended the right of the plaintiffs to go on under the contract in a case like the present, where there was a common interest in the performance, and where what had been done and what remained to do probably were to a large extent interdependent. *Davis* v. *Campbell*, 93 Iowa, 524. *Gibbons* v. *Bente*, 51 Minn. 499. *Cravens* v. *Eagle Cotton Mills Co.* 120 Ind. 6. See *Frost* v. *Knight*, L. R. 7 Ex. 111, 112; *Johnstone* v. *Milling*, 16 Q. B. D. 460, 470, 473; *Dalrymple* v. *Scott*, 19 Ont. App. 477; *John A. Roebling's Sons' Co.* v. *Lock Stitch Fence Co.* 130 Ill. 660, 666; *Davis* v. *Bronson*, 2 No. Dak. 300, 303.

Before leaving the case it is interesting to remark that the notion rightly exploded in *Cottage Street Church* v. *Kendall*, 121 Mass. 528, 530, 531, that the subscription of others than the plaintiff may be a consideration, seems to have remained unquestioned with regard to agreements of creditors to accept a composition. Compare the remarks of Wells, J., in *Perkins* v. *Lockwood*, 100 Mass. 249, 250, (*Farrington* v. *Hodgdon*, 119 Mass. 453, 457, *Trecy* v. *Jefts*, 149 Mass. 211, 212, *Emerson* v. *Gerber*, 178 Mass. 130,) with what he says in *Athol Music Hall Co.* v. *Carey*, 116 Mass. 471, 474.

It is not argued that whatever contract was made was not made with the plaintiffs. *Sherwin* v. *Fletcher*, 168 Mass. 413.

　　　　　　　　*Demurrer overruled; exceptions overruled.*

*E. F. McClennen*, for the defendant Auerbach.

*B. N. Johnson*, for the plaintiffs.