# H. P. Hood & Sons v. John Heins, Mrs. A. S. Hill, L. W. Howe, F. R. O'Brien, J. A. and W. A. Sutton, U. A. Wheelock, M. Keith Wright and E. H. Chittenden

[ 205 A.2d 561 ]

October Term, 1964

Present: Holden, C. J., Shangraw, Barney and Smith, JJ. and Hill, Supr. J.

Opinion Filed December 1, 1964

*Ryan, Smith & Carbine* for plaintiff.

*Latham & Eastman* for defendants.

**Holden, C. J.** The plaintiff, H. P. Hood & Sons has invoked equity jurisdiction to obtain declaratory relief from an agreement it made with the several defendants, or their predecessors. The case was submitted on an agreed statement of facts which include the context of the undertaking which the plaintiff seeks to have declared null and void.

The contract is dated March 13, 1945. The plaintiff, a Massachusetts corporation, is designated as the "Dealer." The defendants are described as being various farmer residents of Chittenden County, referred to in the instrument as "Local Producers" and "Boston Producers" according to their membership in certain marketing co-operatives in the area of Burlington, Vermont.

The contract recites that the plaintiff, as the dealer, "contemplates the acquisition by purchase, of the assets of Burlington Co-operative Milk Products Co., Inc. and Burlington Co-Operative Creamery Association, Inc." The contracting members of the first named co-operative signed the agreement as "Local Producers." The members of the creamery association signed as "Boston Producers."

The contract states that the plaintiff desires to enter into a contract for the purchase of milk produced by both groups. The writing goes on to recite—"in consideration of the unanimous agreement of the parties hereto, as stockholders of the said co-operatives, to a sale of the assets of the respective co-operatives to DEALER and in further consideration of the mutual promises and agreements" which follow.

The contract then provides that the plaintiff will purchase the milk produced by the defendants and pay the Boston price as established by Milk Market Administrator, plus a sum equal to the difference between the Boston price and the State of Vermont control price. As the plaintiff requires additional milk for the Burlington market, it agreed to select producers by lot from the Boston group. The plaintiff also agreed not to purchase from other sources until all of

the Boston Producers had been transferred to the Local group. The agreement stipulated a premium would be paid of nine cents per hundredweight on all milk with a bacteria count of less than one hundred thousand raw and three thousand heat resistant.

The termination clause is of particular importance in this appeal. It provided that the agreement should remain in full force and effect until terminated by any producer by giving ninety days notice of his election to end his participation in the contract. It was specified that such an election by a particular producer would not affect the remaining parties to the agreement.

As to the plaintiff, it provided: "The DEALER may terminate this agreement only as to all PRODUCERS whenever it shall discontinue its wholesale and retail business in the Burlington Market."

The contract was signed by the plaintiff as the Dealer. The other parties were the milk producers in Chittenden County and included the defendants Heins, Hill, Howe and Wheelock. These defendants signed the writing as "Local Producers." The defendants Sutton and O'Brien signed the agreement as "Boston Producers." There were some twenty-one other producers who were parties to this undertaking. For one reason or another these original parties to the contract do not presently supply milk to the plaintiff Hood & Sons.

In addition to the written contract, additional facts were stipulated:

"2. The defendant, M. Keith Wright, is the son of M. J. Wright, now deceased, who was a party to the original agreement. M. Keith Wright claims benefit of said agreement as the successor in title and heir of his father. He has delivered milk to the plaintiff since the death of his father and has been paid therefor on the basis of the quality premium set forth in Paragraph 7 of the contract.

"3. The Defendant, E. H. Chittenden, is the son of E. S. Chittenden, now deceased, who was a party to the original agreement. E. H. Chittenden claims benefit of said agreement as the successor in title and heir of his father. He has delivered milk to Plaintiff since the death of his father and has been paid therefor on the basis of the quality premium set forth in Paragraph 7 of the contract.

"4. That for a long time prior hereto each of the Defendants has been delivering large quantities of milk to Plaintiff which has

a bacteria count of no more than one hundred thousand raw and three thousand heat resistant and each of said defendants have been demanding the quality premium referred to in Paragraph 7 of the contract.

"5. It is reasonable to anticipate that each of the Defendants will continue to produce milk with bacteria counts below one hundred thousand raw and three thousand heat resistant for an indefinite time in the future.

"6. The plaintiff has attempted on several occasions to give each of the defendants notice of termination of the 1945 contract. The defendants have always insisted that the attempted termination was nugatory and of no legal validity. Each has asserted his right to the quality premium referred to in Paragraph 7 of the contract."

The chancellor enlarged upon the agreed facts from evidence presented at the time of hearing. He reports in his findings that the plaintiff purchased the assets of the Burlington Cooperative Milk Products Co., Inc. and the Burlington Co-operative Creamery Association, Inc. at approximately the same time of its agreement with the defendants. On May 28, 1963, the plaintiff notified the defendants that it would discontinue payments of the nine cent premium after June 1, 1963. At the time of this notice, none of the producers had elected to terminate the agreement under the option afforded them in paragraph 8 of the contract. Payments under this clause were halted on June 1, 1963. Since March 12, 1945, the plaintiff has, and presently is, engaged in the wholesale and retail milk business in the Burlington market.

On these facts, a decree was entered which adjudged the instrument of March 12, 1945 "a legal and valid Agreement and remains in full force and effect according to its terms and conditions as to all defendants except M. Keith Wright, E. H. Chittenden and Mrs. A. S. Hill." The plaintiff was discharged of liability to Wright and Chittenden by order of the chancellor for the reason that they were not original parties to the agreement. Liability to Mrs. Hill was declared discharged by her death on September 2, 1963. The plaintiff and the defendants Wright and Chittenden appeal.

The plaintiff challenges the contract on several specific points. Each contention bears directly on the central issue of consideration. The controlling question presented by the plaintiff's appeal is whether

the obligations imposed on the defendants are sufficient in law to require the plaintiff to continue to purchase the defendants' milk production at the rates established by their agreement.

■ We are concerned with a contract dealing with commercial transactions, formally undertaken by all of the parties. "There is the strongest reason for interpreting a business agreement in the sense which will give it a legal support . . . " *Martin* v. *Meles,* 179 Mass. 114, 60 N.E. 397, 398 (Holmes, C. J.). And at the outset, at least, we must presume that the parties intended to make a valid and binding engagement. *G. Loewus & Co.* v. *Vischia,* 2 N.J. 54, 65 A.2d 604, 605.

■ This instrument, as with other written agreements, must be construed to give effect to the intention of the parties as stated in their writing. And the language used must be interpreted with reference to the purpose sought to be accomplished and the conditions prevailing at the time the instrument was executed. *Davidson* v. *Vaugh,* 114 Vt. 243, 246, 44 A.2d 144; *Hill* v. *Bell,* 111 Vt. 131, 135, 11 A.2d 211; *Vermont Kaolin Corp.* v. *Lyons,* 101 Vt. 367, 376, 143 Atl. 639. Where the language is clear, the intention and understanding of the parties must be taken to be that which their agreement declares. *Davidson* v. *Vaughn, supra,* 114 Vt. at 246; *Stratton* v. *Cartmell,* 114 Vt. 191, 194, 42 A.2d 419; *Freeguard* v. *Bingham,* 108 Vt. 404, 406, 187 Atl. 801.

■ The contract itself speaks at some length of the consideration afforded by the several parties. We agree with the plaintiff that these recitals in the contract are not the equivalent of true findings. They do not determine the facts. The findings establish that these statements were integrated into the written memorial of the transaction. They became a part of the contractual act and were not opened to dispute in the record before us. See Wigmore, Evidence §2433 (3rd Ed.). In this proceeding for a declaratory decree, they are of first importance in explaining the motives of the parties and the inducement for the promises that were exchanged by the several parties.

The contract recites that H. P. Hood & Sons "contemplates the acquisition, by purchase, of the assets" of two Burlington milk co-operatives whose membership was composed of the producers who signed it. The contract also recites that the Hood company desires

to enter into an agreement for the purchase of the milk produced by both groups of producers.

The consideration defined in the writing is specifically related to the two objectives of the plaintiff, previously stated. In substance the contract declares that the market agreement was extended by the plaintiff for two reasons: (1) the defendants' unanimous agreement, as stockholders, to the plaintiff's purchase of their co-operatives; and (2) to obtain a milk supply for its new market.

The unanimous consent which the defendants imparted to the transaction was a legal detriment. Until the promise of the plaintiff was extended and accepted, the defendants as producers and members of the co-operatives concerned were at liberty to withhold consent to the sale and preserve the existing markets. These markets were relinquished.

By the same token, a legal benefit was conferred on the plaintiff. It procured the defendants' consent to the transfer. Until the undertaking of March 12, 1945, this was something which the plaintiff was not entitled to receive. *Bigelow* v. *Bigelow,* 95 Me. 17, 49 Atl. 49, 51; *Wit* v. *Commercial Hotel Co.,* 253 Mass. 54, 149 N.E. 609, 612; 1 Williston, Contracts §102A (3d Ed.).

"Mutual promises, in each of which the promisor undertakes some act or forebearance that will be, or apparently may be, detrimental to the promisor or beneficial to the promisee, and neither of which is void, are sufficient consideration for one another." 1 Williston, Contracts §103 (3rd Ed.). See also, *Hercules Powder Co.* v. *Campbell's Sons Co.,* 156 Md. 346, 144 Atl. 510, 517; *Moers* v. *Moers,* 229 N.Y. 294, 128 N. E. 202, 203, 14 A.L.R. 225.

The plaintiff seeks to isolate its acquisition of the co-operative assets from the marketing agreement to pay the premium price. From this concept it advocates that the defendants' obligation to deliver their milk production is of indefinite duration, lacking in mutuality and terminable at the producers' election. As such, the plaintiff contends the defendants' promise is illusory and furnishes no legal consideration for the plaintiff's promise to purchase at the contract price. In support of this position, the plaintiff imposes substantial reliance on *Mullaney* v. *C. H. Goss Co.,* 97 Vt. 82, 122 Atl. 430.

That case concerned a contract of employment. The evidence justified a finding by the jury that the hiring was not for a year, nor for specified time, but "for so long as conditions of business war-

ranted." It was held error for the trial court to fail to instruct the jury that upon such a finding as to indefinite duration, the contract was terminable at the will of either party. *Mullaney* v. *C. H. Goss Co. supra*, 97 Vt. at 87. To the same effect, in connection with delivery contracts, are *Marble* v. *Standard Oil Co.*, 169 Mass. 553, 48 N.E. 783, 785; *Willard* v. *United States*, 262 U.S. 495, 67 L.Ed. 1086, 1088; *Atwater* v. *United States*, 262 U.S. 495, 67 L.Ed. 1089, 1090.

It is, of course, well established that a promise which reserves to the promisor the election to perform or not, at his option, is insufficient to bind performance of a counter-promise. And an agreement which reserves the right of cancellation to one promisor, at his pleasure, will not constitute an enforceable contract. However, there is no requirement that the option of one promisor must be coextensive with the privilege of termination extended to the counter-promisor. If there are mutual promises, each may be binding according to its particular terms and conditions. *Central Transit Co.* v. *Chicago Auditorium Assn.* 240 U.S. 581, 60 L.Ed. 811, 816; *Berry's Sons Co.* v. *Moanrk-Gasoline & Oil Co.*, 33 F.2d 74, 64 A.L.R. 1110, 1114; *Gurfein* v. *Werbelovsky*, 97 Conn. 703, 118 Atl. 32, 33; 1 Williston, Contracts §105A (3rd Ed.).

The defendants had no right to halt deliveries until ninety days after notice of termination. Since the law does not favor arbitrary cancellation clauses, it is the current tendency to regard even a slight restriction on the right of cancellation as a legal detriment, sufficient to satisfy the requirement of consideration. *Chevrolet Motor Co.* v. *Gladding*, 42 F.2d 440; *Philadelphia Bell Club* v. *Lajoie*, 202 Pa. 210, 51 Atl. 973, 975; 1 Williston, Contracts §105 (3d Ed.).

It is urged by the plaintiff that under the contract the defendants are under no obligation to supply any milk to the plaintiff. We disagree. Production and delivery was required for ninety days after notice. It is not to be presumed that the defendants would close out their dairies. To the contrary, the reasonable assumption is that these producers would continue to supply the needs for the Burlington market. *Minnesota Lumber Co.* v. *Whitebreast Coal Co.*, 160 Ill. 85, 43 N.E. 774, 777. In all such business undertakings, an obligation of good faith is implied. *Wm. C. Atwater Co.* v. *Terminal Coal Co.*, 115 F.2d 887, 888.

The weight of authority is clearly and rightly that mutual promises to buy and sell all the buyer requires or all the product the seller produces generates sufficient consideration to support a valid bi-lateral contract. To be sure, the defendants could terminate their deliveries to the plaintiff on ninety days after notice. On the other side of the undertaking, the plaintiff could avoid further performance by cessation of business in the Burlington area. Either of these results could be achieved only by conduct on the part of the promisors which imposed a legal detriment. 2 Williston, Sales §464a (Rev. Ed.) ; *Robertson* v. *Gervan,* 270 F. 643 ; *Southwest Pipe Line Co.* v. *Empire Natural Gas Co.,* 33 F. 2d 248, 64 A.L.R. 1229, 1234 ; *Burgess Sulphite Fibre Co.* v. *Broomfield,* 180 Mass. 283, 62 N.E. 367, 368 ; *Walker* v. *Mason,* 272 Pa. 315, 116 Atl. 305, 306 ; *Keenan* v. *Yorkville Cotton Oil Co.,* 109 S.C. 462, 1 A.L.R. 1387, 1892.

The obligations of the defendants were sufficient in law to bind the plaintiff to accept defendants' milk on the terms specified. The chancellor's declaration that the agreement of March 12, 1945 was valid and enforceable according to its terms was well founded.

The remaining question concerns the issue raised in the cross appeals of the defendants Wright and Chittenden. The chancellor decreed that these defendants have no rights under the 1945 agreement. Their appeal is based on the contention that the contract is enforceable, not only by the original parties, but by their heirs, personal representatives and successors as well.

In the first place, the contract does not, by its language, extend to heirs, successors and assigns. While absence of words of assignability is not necessarily controlling, it is of some significance. *Smith Bell & Hauck* v. *Cullins,* 123 Vt. 96, 101, 183 A.2d 528. It is of particular importance in this instance where the marketing agreement is unlimited as to time. To hold the agreement assignable, could project the obligation through successive assignments into perpetuity.

Secondly, when the plaintiff's undertaking was given, it was undoubtedly based on its knowledge of the existing market, the quantity of milk produced by the members of the existing co-operatives, the nature and quality of their production. A transfer of the benefits of the agreement to strangers might well disrupt the entire marketing arrangement and place excessive burdens on the dealer

which were not within the contemplation of any of the original signers. *Crane Ice Cream Co.* v. *Terminal Freezing and Heating Co.*, 147 Md. 588, 128 Atl. 280, 39 A.L.R. 1184, 1187. See also, *Kemp* v. *Baerselman* (Eng.) 2 K.B. 604, 2 B.R.C. 436; *Winslow* v. *Fraser,* 30 Vt. 522.

Moreover, there is nothing in the findings to establish that either Wright or Chittenden are the legal representatives of the deceased parties under whom they claim. And there is nothing to bind them to the ninety day production period to which the original producers were obligated.

The defendants argue that if they have no standing as heirs, personal representatives or successors to the original parties, their rights are protected by reason of a novation. Neither the agreed facts nor the additional findings made by the chancellor support this conclusion.

■ To constitute a novation there must be a valid existing contract which is extinguished by mutual agreement between the original obligors and obligees and the new party. It is the mutual understanding that the stranger is accepted in place of the first obligor that discharges the original undertaking and transfers the obligation to the new participant. *Manley Bros. Co., Inc.* v. *Sommers,* 100 Vt. 292, 297, 137 Atl. 336; *Spaulding* v. *H. E. Fletcher Company,* 124 Vt. 318, 205 A.2d 556; 6 Williston, Contracts §1865 (Rev. Ed.) ; Restatement, Contracts §424.

There is nothing in the findings to indicate that the plaintiff agreed with the elder Wright and Chittenden and their sons that the original contract should be discharged. Neither does it appear that the defendants were accepted as producers under a new agreement.

The findings do report that the plaintiff continued to accept deliveries from these defendants, after their fathers' death, and at the premium rate. But that fact, standing alone, will not estop the plaintiff from terminating the arrangement.

■ To work an estoppel, it must appear that the plaintiff was under a duty to inform the defendants that the original market agreement was at an end and that the plaintiff's failure in that regard operated to the defendants' detriment. *American Fidelity Co.* v. *Daniels,* 122 Vt. 14, 18, 163 A.2d 617; *Boston & Maine Railroad* v. *Howard Hardware Company,* 123 Vt. 203, 211, 186 A.2d 184; *Vinton* v. *Atlas Assurance Co., Ltd.,* 107 Vt. 272, 278, 178 Atl. 909. The

facts agreed upon speak of no assurance from the plaintiff that the market would continue. Nor do the findings indicate that either Wright or Chittenden have suffered any disadvantage because the premiums were paid longer than required.

It is argued that these defendants relinquished the valuable right to contract with other dealers for the sale of their milk. The findings are silent on this point. Without a finding that the nine cent premium was available in other markets, it cannot be said that the defendants' reliance was detrimental.

No error appears. The declaratory decree is *affirmed.*