**Elizabeth R. COSTLE, Commissioner of Banking, Insurance and Securities of the State of Vermont, Liquidator of Ambassador Insurance Company, Plaintiff,**

v.

**FREMONT INDEMNITY COMPANY, Defendant.**

No. 2:93–CV–157.

United States District Court,
D. Vermont.

Oct. 26, 1993.

---

Richard B. Whitney, Fordham E. Huffman, Jones, Day, Reavis & Pogue, Cleveland, OH, and Jacqueline A. Hughes, Vermont Dept. of Banking, Ins. and Securities, Montpelier, VT, for plaintiff.

John T. Sartore, Paul, Frank & Collins, Inc., Burlington, VT, and Steven C. Schwartz, Buchalter, Nemer, Fields & Younger, New York City, for defendant.

## OPINION AND ORDER

PARKER, Chief Judge.

This is a commercial collection action instituted by the liquidator of a domestic insolvent insurance company against its out-of-state reinsurer for proceeds allegedly due under several reinsurance contracts. The lawsuit was originally brought in state court, but was removed by the defendants on the basis of diversity jurisdiction. Shortly after removal, defendants moved to stay the action in favor of arbitration. Plaintiff, however, seeks to have the case remanded to state court under the *Burford* abstention doctrine. In the alternative, plaintiff opposes the stay. The defendant opposes remand.

## I. BACKGROUND

Ambassador Insurance Company ("Ambassador") is a property and casualty insurance company domiciled in Vermont. In November 1983, the Commissioner of Banking and Insurance ("Commissioner") sought an injunction in Washington County Superior Court against further transactions of business by Ambassador pursuant to the Commissioner's powers under the then-existing state statutes governing reorganization and receivership of insurance companies. *See* Vt. Stat.Ann. tit. 8, §§ 3591–3599 (1984) (repealed 1991).[1] Ambassador agreed that the company was in hazardous financial condition and filed a stipulated order to that effect in the superior court. The court thereafter appointed the Commissioner as receiver of Ambassador and directed the Commissioner to determine whether the company could be rehabilitated or whether it should be liquidated.

On March 30, 1984, after concluding that rehabilitation was not a viable alternative for Ambassador, the Commissioner sought an order for liquidation. Following a lengthy trial on the matter, the court ordered liquidation based on its finding that Ambassador was insolvent and could not be rehabilitated. The court specifically found that as of March 31, 1984, Ambassador was insolvent in an amount exceeding 45 million dollars. By way of a Liquidation Order filed March 10, 1987, the court then terminated the rehabilitation of Ambassador and appointed the Commissioner as Liquidator of Ambassador ("the Liquidator"), authorizing her to take possession of the assets of the company and to administer them under the court's supervision.

The terms of the March 10, 1987 Liquidation Order vested all title to all property and assets of Ambassador in the Liquidator and enumerated the Liquidator's duties and powers. Those powers include, among others, the power to:

> (e) to collect all debts and moneys due and claims belonging to Ambassador, wherever located, and for this purpose:
>
>> (i) to institute timely action in other jurisdictions, in order to forestall garnishment and attachment proceedings against such debts;
>>
>> (ii) to do such other acts as are necessary or expedient to collect, conserve or protect its assets or property, including

---

1. The statutory framework for rehabilitation and liquidation of insurers is now codified at Vt.Stat. Ann. tit. 8, §§ 7031–7100 (Supp.1992).

the power to sell, compound, compromise, or assign debts for purposes of collection upon such terms and conditions as he deems appropriate; and

(iii) to pursue any creditor's remedies available to enforce his claims; ...

(j) subject to the provisions of paragraph 11(k) hereof, to institute and to prosecute, in the name of Ambassador or in his own name, any and all suits and other legal proceedings, to defend suits in which Ambassador or the Liquidator is a party, in this state or elsewhere, whether or not such suits are pending as of the date of this Order, to abandon the prosecution or defense of suits, legal proceedings and claims which he deems inappropriate to pursue further and to settle suits, legal proceedings or claims on such terms and conditions as he deems appropriate;

(k) advance approval by the Court shall be required in any case in which the Liquidator seeks to abandon the prosecution of any claim, or to settle any claim, which the Liquidator has asserted to have a value in excess of One Million Dollars ($1,000,000); ...

*In re Ambassador Ins. Co., Inc.*, No. S–444–83 Wnc (Wash.Super.Ct. filed March 10, 1987) (Liquidation Order) (Paper 16, Exhibit A at 4–7).

Pursuant to those powers, the Liquidator commenced this action in Washington Superior Court on April 23, 1993. The Complaint states that beginning in 1978, Ambassador and the defendant, Fremont Indemnity Company ("Fremont"), entered into a series of excess of loss reinsurance contracts. Fremont is a corporation incorporated in California and having its principal place of business there; Fremont is also licensed as a reinsurer in Vermont. The contracts between Ambassador and Fremont contain an insolvency clause that requires Fremont, in the event that Ambassador is placed in liquidation, to tender reinsurance payments on account of incurred losses to the Liquidator of Ambassador. The Liquidator alleges that the Ambassador estate has paid claims made against the insurance policies that were reinsured by Ambassador with Fremont, and that Fremont has failed and refused to pay its rein-

surance obligations despite a demand for payment. Claiming breach of contract, the Liquidator seeks damages in an amount not less than $3,500,000. Prior to removal, the Liquidator requested, by way of a motion filed in the superior court, that this case be assigned to a receivership judge.

Fremont timely filed its Notice of Removal, alleging diversity jurisdiction pursuant to 28 U.S.C. § 1332 and removal pursuant to 28 U.S.C. § 1441(a). There is no question that removal was proper. On June 2, 1993, Fremont answered the Complaint, acknowledging and identifying its contracts with Ambassador, but denying the allegations of breach of contract. Fremont asserted a number of affirmative defenses, among them, its right to arbitration pursuant to the arbitration clauses in each of its contracts with Ambassador. Accompanying its Answer, Fremont filed a motion to stay the action in favor of arbitration.

On June 23, 1993, the Liquidator moved to remand the action, asking the Court to abstain from exercising its jurisdiction over this case "in consideration of the strong interest of the State of Vermont in the consistent administration of its regulatory scheme for the liquidation of insolvent insurance companies." (Memorandum in Support of Motion to Remand, Paper 16 at 4). Invoking the abstention doctrine enunciated in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and its progeny, the Liquidator pursues a means for returning to the forum of its choosing. The Liquidator argues that the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015 (1976), which evinces the clear intent of Congress to leave the regulation of the business of insurance to the states, makes the *Burford* analysis a "reflexive inquiry" in any insurance regulation matter brought in federal court. Moreover, the Liquidator argues, where a state has created a comprehensive scheme for liquidating insolvent insurance companies, federal courts routinely abstain from cases involving matters relating to the administration of an insolvent insurer's estate.

Finally, the Liquidator urges the Court to decide the motion for remand before addressing Fremont's motion for a stay, argu-

ing that the issues require separate, independent inquiries. In effect, the Liquidator is arguing that in the context of this case, the removal statute, 28 U.S.C. § 1441, is inconsistent with federal policies underlying the McCarran–Ferguson Act; and further, removal in this case impairs state laws regulating the business of insurance. Under the Liquidator's analysis, a decision to abstain can be reached without resort to the issue of the application of the Federal Arbitration Act.

Fremont, on the other hand, contends that a defense of its rights under the Federal Arbitration Act has created a federal question so entangled with the state law issues presented in the case that remand is inappropriate. The Court agrees with the plaintiff that the remand issue can be determined without a discussion of the Federal Arbitration Act, 9 U.S.C. §§ 1–16 (1970 & Supp. 1993).

## II. REMAND

The linchpin of the Liquidator's argument in support of remand is her construction of Vermont's statutory laws on liquidation of insolvent insurers as a "regulation of the business of insurance." If the insolvency laws are seen as regulating the business of insurance, they fall within the category of state laws Congress sought to preserve as preeminent under the McCarran–Ferguson Act. That Act limits the effect of federal legislation on state regulatory action over insurance companies. 15 U.S.C. § 1012(b). Likewise, the Liquidator seems to be arguing, the McCarran–Ferguson Act, via the *Burford* abstention doctrine, requires federal courts to abdicate federal jurisdiction when confronted with questions related to a state scheme regulating insurance companies.

As discussed below, however, the Court need not reach the merits of this argument because the Liquidator has failed to demonstrate that this case satisfies three basic elements of the *Burford* abstention doctrine.

*The Burford Abstention Doctrine*

■ Federal courts are courts of limited jurisdiction with their bounds defined by Congress. U.S. Const. art. III. Within

these limits however, federal courts have an "unflagging obligation" to exercise the jurisdiction given them to adjudicate controversies. *Law Enforcement Ins. Co., Ltd. v. Corcoran,* 807 F.2d 38, 39 (2d Cir.1986), *cert. denied,* 481 U.S. 1017, 107 S.Ct. 1896, 95 L.Ed.2d 503 (1987). Diversity jurisdiction is no exception to this rule; "so long as Congress chooses to have us exercise diversity jurisdiction, we must do so unflaggingly." *Id.* at 41. Moreover, by its enactment of the removal statutes, 28 U.S.C. §§ 1441–1452, Congress has bestowed upon certain defendants the right to choose a federal forum if the matter could have been brought there originally. Given that right, this Court sees no reason why a diversity jurisdiction case properly removed to federal court should receive different treatment for purposes of an abstention inquiry than a case originally brought here.

■ With these general principles in mind, we now turn to the question of abstention. The Supreme Court has carved out three types of cases where federal courts may decline to exercise their jurisdiction. First, a federal court may decline to adjudicate constitutional issues in cases where those issues might be mooted or modified by a state court determination on state law issues. *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Second, a federal court should abstain from exercising its jurisdiction where that jurisdiction is invoked to restrain a state criminal proceeding, so long as the case does not involve allegations of bad faith, harassment or a patently invalid state statute. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Finally, abstention is warranted if a federal court's review of difficult questions of state law would be disruptive to the state's efforts to establish a coherent policy on an issue of public concern. *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424, *reh'g denied,* 320 U.S. 214, 63 S.Ct. 1442, 87 L.Ed. 1851 (1943).

It is the application of this latter doctrine, known as the "*Burford* doctrine," which is disputed in the case at bar. The Supreme Court recently distilled this doctrine to the following principle:

Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies; (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar."; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive to a matter of substantial public concern." *Colorado River Water Conservation Dist. v. United States, supra* [424 U.S. 800], at 814 [96 S.Ct. 1236, at 1245, 47 L.Ed.2d 483 (1976)].

*New Orleans Public Serv., Inc. v. Council of the City of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989) (hereinafter *"NOPSI."*). As is apparent from the plain language of Justice Scalia's opinion, the *NOPSI* distillation limits abstention under *Burford* to courts sitting in equity. A number of courts have so held. *See e.g., Fragoso v. Lopez,* 991 F.2d 878, 882 (1st Cir.1993); *University of Maryland at Baltimore v. Peat Marwick Main & Co.,* 923 F.2d 265, 271–72 (3rd Cir.1991); *Duane v. Government Employees Ins. Co.,* 784 F.Supp. 1209, 1223 (D.Md.1992). Given that restriction, the *Burford* doctrine will not provide the Liquidator the remand she seeks here: This Court is not sitting in equity. The case before me is a typical contract dispute action clothed in the garb of a commercial collection action. As such, it is an action at law. Absent controlling authority to the contrary, a *Burford* inquiry is inappropriate under *NOPSI.*

In addition, the Court is not convinced that the Liquidator has satisfied other elemental conditions which would make a *Burford* inquiry even relevant. As discussed by the First Circuit in *Fragoso,* 991 F.2d 878, the Supreme Court's decision in *NOPSI* refined and distilled the *Burford* doctrine so that it now applies to a rather small sphere of cases. In addition to the requirement that the action be equitable in nature,

*NOPSI* characterizes *Burford* abstention as a doctrine shielding "state administrative agencies" from federal court interference. *Id.* While Puerto Rico's tailored revision of the Rehabilitation and Liquidation Model Act, *see* P.R.Laws Ann. tit. 26, §§ 4001–4054, sets in place a "comprehensive framework for the liquidation of insolvent insurance companies and the resolution of claims against them," *Gonzalez v. Media Elements, Inc.,* 946 F.2d 157, 157 (1st Cir.1991) (per curiam), we question whether the scheme creates a state administrative agency, as opposed to a judicial structure, to which deference under *Burford* may be paid. While the Insurance Code *regulates* insolvent insurers doing business in Puerto Rico, it is not at all clear that it sets up the functional equivalent of an administrative agency.

[Additionally], *Burford* abstention is implicated when the federal courts are asked to interfere with state processes by *reviewing* the proceedings or orders of state administrative agencies, ergo, the requirement of "timely and adequate state-court review." *NOPSI,* 491 U.S. at 361, 109 S.Ct. at 2514. In *Burford,* for example, the Supreme Court abstained in the face of a demand that it review a state railroad commission's order allocating oil drilling rights. *See Burford,* 319 U.S. at 316–17, 63 S.Ct. at 1098–99; *see also NOPSI,* 491 U.S. at 352–53, 109 S.Ct. at 2509–10 (discussing abstention in the context of a challenge to a ratemaking order); *Alabama Public Service. Comm'n v. Southern Ry. Co.,* 341 U.S. 341, 342, 71 S.Ct. 762, 764, 95 L.Ed. 1002 (1951) (approving abstention from review of a commission order prohibiting the discontinuance of certain local train service). Here, however, we are not being asked to review the actions or decisions of any state body, be it judicial or administrative. Thus, the relevancy of *Burford* abstention is equally questionable from this standpoint.

*Id.* at 883 (footnote omitted).

The *Fragoso* court further noted that the estates of insolvent insurance companies are exempt from federal bankruptcy laws and that state systems centralizing the proceedings for the liquidation of an insolvent insurer are much like the federal bankruptcy system with the Commissioner, as liquidator or receiver, acting as a agent of the court, much

like a trustee does. *Id.* at 883 n. 7. That analogy is germane to this case where the state court appointed the Commissioner of Banking and Insurance as Liquidator of an insolvent insurance company. She was not appointed by the court to an administrative agency. That Liquidator is now a litigant in a judicial proceeding to collect insurance proceeds. Furthermore, by statute, her actions in liquidating Ambassador are directly supervised by a court. Vt.Stat.Ann. tit. 8, § 3601; *In re Ambassador Ins. Co., Inc.* No. S–444–83 Wnc (Wash.Supr.Ct. filed March 10, 1987) (Liquidation Order).

The Liquidator here relies heavily upon a 1988 Second Circuit opinion, *Corcoran v. Ardra Ins. Co., Inc.,* 842 F.2d 31 (2d Cir.1988), wherein the *Burford* doctrine was applied in circumstances analogous to the case at bar. But in *Ardra* the Second Circuit did not have the guidance provided by the Supreme Court in its 1989 opinion in *NOPSI.* In light of *NOPSI* 's restrictive characterization, the First Circuit's cogent analysis of the elements of *Burford* is highly persuasive.

Moreover, as can be gleaned from the *Ardra* decision, the Second Circuit was not presented with the question of whether the *Burford* doctrine is relevant in actions at law, or cases involving no issue of state administrative action. The *Ardra* Court was reviewing two questions: (1) whether an appellate court may review remand orders; and (2) whether for purposes of mandamus it was an abuse of discretion for the lower court to remand. In resolving this latter question, the Second Circuit broadly interpreted the goal of *Burford* abstention as being the avoidance of interference with "specialized regulatory schemes." *Id.* at 37. Finding that the case presented difficult questions of state law and important questions relating to a state regulatory scheme, the Court found no abuse of discretion in remanding a collection dispute between an insolvent insurer and its reinsurer.

Interestingly, the difficult questions of state law in *Ardra* related to the applicability of the Foreign Arbitral Awards Convention, 9 U.S.C. § 202, which would depend upon the powers granted by state law to the Superin-tendent of Insurance in the State of New York. *Id.* at 33–34. As noted by one court,

Despite the frequency of *Burford* abstention in cases involving insolvent insurers, the Second Circuit has never imposed a blanket policy of abstention in such cases. Rather, it has stated that New York's system for rehabilitating and liquidating insurance companies "is the type of regulatory scheme that warrants serious consideration of abstention when the question before the court is a novel one ..."

*Curiale v. Amberco Brokers Ltd.,* 766 F.Supp. 171, 175 (S.D.N.Y.1991) (quoting *Ardra,* 842 F.2d at 37). The instant case does not involve New York's liquidation scheme and more significantly, there is no difficult or novel question of state law for the Court to decide.

Notwithstanding that distinction, I also believe that had the Second Circuit had the benefit of Justice Scalia's opinion in *NOPSI* explaining *Burford* abstention, the *Ardra* court might have resolved the question it faced differently. Moreover, because the standard set forth in *NOPSI* is a more recent interpretation of *Burford* than that outlined in *Ardra,* and being that it is handed down from the highest court in the land, I believe I am constrained to follow its lead. Accordingly, the Court finds that *Burford* abstention is not appropriate in this case.

## III. DEFENDANT'S MOTION FOR A STAY IN FAVOR OF ARBITRATION

Having disposed of plaintiff's motion for remand, the Court now turns to the defendant's motion for a stay in favor of arbitration. The Court begins with a brief discussion of the Federal Arbitration Act ("the FAA"), 9 U.S.C. §§ 1–16.

### A. The Federal Arbitration Act

■ Until the enactment of the FAA, litigants seeking to enforce arbitration clauses met with an entrenched judicial hostility toward such alternative dispute resolutions. In establishing a federal policy favoring arbitration, the FAA countered this hostility by giving arbitration agreements the same stature as any other contractual agreement. *Shearson/American Express, Inc. v. McMa-*

*hon,* 482 U.S. 220, 225–26, 107 S.Ct. 2332, 2336–37, 96 L.Ed.2d 185 (1987). The statute's key substantive provision, section 2, provides that arbitration clauses that are a part of any contract involving interstate commerce are valid, irrevocable, and enforceable, unless legal or equitable grounds exist for revocation. 9 U.S.C. § 2. "The effect of [this] section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). The FAA further provides that courts must stay proceedings if the issues presented are covered by an arbitration agreement, and courts may compel arbitration if there is a failure or refusal to comply with an agreement to arbitrate. *Id.* §§ 3–4. These provisions have been construed as integral and interrelated parts of a liberal federal policy favoring arbitration. *Bernhardt v. Polygraphic Co. of America, Inc.,* 350 U.S. 198, 201, 76 S.Ct. 273, 275, 100 L.Ed. 199 (1956).

■ Under the scheme set forth in the FAA, a court must first determine whether a particular dispute is arbitrable, and if so, whether the claims are encompassed within the scope of the arbitration agreement. *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela,* 991 F.2d 42, 45 (2d Cir.1993). The question of whether a party is bound by an arbitration clause is governed by federal law which has " 'preserve[d] general principles of state contract law as rules of decision on whether the parties have entered into an agreement to arbitrate.' " *Id.* at 46 (quoting *Cook Chocolate Co. v. Salomon, Inc.,* 684 F.Supp. 1177, 1182 (S.D.N.Y. 1988)). But as a preliminary matter, where a contract contains an arbitration clause, there is a presumption of arbitrability that is overcome only by a definitive showing that the dispute in question is outside the coverage of the arbitration clause. *Associated Brick Mason Contractors of Greater New York, Inc. v. Harrington,* 820 F.2d 31, 35 (2d Cir.1987). In that regard, all doubts are resolved in favor of arbitration. *Id.*

In the case at bar, Fremont argues that Ambassador and Fremont entered into reinsurance agreements which included enforceable arbitration clauses, and that accordingly, the FAA mandate for a stay applies to this dispute. Attached to its motion for a stay, Fremont included copies of the contracts between Ambassador and Fremont, which indeed include broad arbitration provisions. (*See* Paper 14) Thus, the presumption of an arbitrable dispute applies unless the Liquidator can show that the dispute with Fremont is outside the coverage of the arbitration clauses. The Liquidator, however, makes no such argument. Instead, she contends: (1) that the FAA does not apply here because a liquidator of an insolvent insurance company does not stand in the shoes of that company; and (2) arbitration would impair the state regulatory scheme for liquidating insolvent insurance companies and is thus prohibited by the McCarran–Ferguson Act, 15 U.S.C. § 1012(b).

■ The first prong of the Liquidator's argument seems somewhat disingenuous. As the Liquidator of Ambassador, she seeks to enforce contractual provisions requiring the payment of reinsurance proceeds, yet on the other hand, she seeks to avoid enforcement of arbitration provisions contained in the same contracts. This inconsistent approach has been rejected by several courts: if a liquidator seeks to enforce an insolvent company's rights under a contract, she must also suffer that company's contractual liabilities. *Bennett v. Liberty Nat. Fire Ins. Co.,* 968 F.2d 969, 972 n. 4 (9th Cir.1992) (citing state cases holding same); *Selcke v. New England Ins. Co.,* 995 F.2d 688 (7th Cir.1993) (holding liquidator of insolvent insurer bound to pre-insolvency arbitration agreement with reinsurer); *cf. Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149, 1153 (3d Cir.1989) (trustee-plaintiff stands in debtor's shoes and is bound to arbitrate to same extent debtor would be bound). This Court adopts the same analysis set forth in the above-noted cases and finds that the Liquidator herein stands in the shoes of Ambassador and is thus bound by Ambassador's pre-insolvency contracts, including arbitration provisions.

■ Ambassador's contracts with Fremont each contain an arbitration clause that provides, in pertinent part:

> In the event of differences arising between the contracting parties with reference to the interpretation of this Agreement or their rights with respect to any transaction involved, whether arising before or after termination of this Agreement, such differences shall be submitted to arbitration upon the written request of one of the contracting parties.

*See* Declaration of John W. Sandy and attached exhibits, Paper 14, Exhibit A at Article VIII; Exhibit B at Article VIII; Exhibit C at Article VIII; Exhibit D at Article VIII; Exhibit E at Article VIII. The clear meaning of the language of this provision is an agreement to arbitrate a broad range of disputes, namely, differences of interpretation of the contract or the rights of either party with respect to any transaction. Under Vermont law, where contract language is clear, the intent of the parties is that which their agreement declares. *H.P. Hood & Sons, v. Heins,* 124 Vt. 331, 336, 205 A.2d 561 (1964). Thus, the Court finds that the parties herein have agreed to arbitrate.

■ To determine whether the claims at issue here are within the scope of the agreement to arbitrate, the Court must look to the factual allegations of the complaint. *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 846 (2d Cir.1987). Claims are arbitrable if the factual allegations supporting them "touch matters" covered by the arbitration clause. *Id.* In this case, the Liquidator seeks to enforce certain payment provisions contained in the contracts for reinsurance between Ambassador and Fremont. The dispute centers around Ambassador's rights under the contract, a dispute that falls squarely within the limits of the arbitration clause at issue here. Moreover, as noted above, absent a definitive showing that the dispute in this case is outside the coverage of the arbitration clauses in the Ambassador–Fremont contracts, the presumption of arbitrability will prevail. The Liquidator has made no such showing; consequently, standing in the shoes of Ambassador, she is constrained to arbitrate. A demand for arbitration has been made and pursuant to section 3 of the FAA, a stay is mandatory unless the Liquidator can demonstrate a valid ground for revocation of the arbitration clause. 9 U.S.C. §§ 2–3.

In that vein, the Liquidator raises an equitable concern. She argues that the FAA should not govern this dispute because arbitration would impair the state scheme for liquidating insolvent insurers. The McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015, she contends, precludes such impairment by rendering the FAA nonapplicable in this case.

### B. The McCarran–Ferguson Act

In 1944, the Supreme Court handed down its decision in *United States v. South–Eastern Underwriters Ass'n,* 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440, *reh'g denied,* 323 U.S. 811, 65 S.Ct. 26, 89 L.Ed. 646 (1944), wherein the Court held that insurance companies conducting business across state lines were engaged in interstate commerce and were thus subject to federal antitrust laws. To allay fears that the States' powers to tax and regulate the insurance industry had been usurped by *South–Eastern Underwriters,* "Congress moved quickly to restore supremacy of the States in the realm of insurance regulation." *U.S. Dep't of Treasury v. Fabe,* —— U.S. ——, ——, 113 S.Ct. 2202, 2207, 124 L.Ed.2d 449 (1993). Through the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015, Congress re-established state regulatory authority over the "business of insurance." *Id.* (quoting *Prudential Ins. Co. v. Benjamin,* 328 U.S. 408, 429, 66 S.Ct. 1142, 1154, 90 L.Ed. 1342 (1946)).

The provision of the McCarran–Ferguson Act that is central to our discussion today is the first clause of section 1012(b), which provides, in pertinent part:

> (b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any state for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance ...

15 U.S.C. § 1012(b). In its recent decision in *Fabe,* the Supreme Court expounded on the meaning of this provision.

The McCarran–Ferguson Act did not simply overrule *South–Eastern Underwriters* and restore the status quo. To the contrary, it transformed the legal landscape by overturning the normal rules of pre-emption. Ordinarily, a federal law supersedes any inconsistent state law. The first clause of § 2(b) reverses this by imposing what is, in effect, a clear-statement rule, a rule that state laws enacted "for the purpose of regulating the business of insurance" do not yield to conflicting federal statutes unless a federal statute specifically requires otherwise.

*Fabe,* —— U.S. at ——, 113 S.Ct. at 2211. Thus, the McCarran–Ferguson Act contains an anti-pre-emption provision: if a state law regulates the business of insurance, no federal law may impair it, unless it too regulates the business of insurance.

The application of section 1012(b), however, is confined to a limited sphere of state regulatory activity, *i.e.,* the regulation of the "business of insurance." The *Fabe* opinion elucidates this concept, reaffirming an earlier ruling which characterized the focus of section 1012(b) as being a focus on the relationship between an insurance company and its policyholders. *Id.* —— U.S. at ——, 113 S.Ct. at 2208 (citing *SEC v. National Securities Inc.* 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969)). That is not to say that the business of insurance is limited strictly to the writing or performance of the terms of an insurance policy. But the long and short of it is that state statutes must be aimed at protecting or regulating the relationship between the policyholder and the insurer to constitute regulation of the "business of insurance." *Id.* To the extent that a state scheme "is designed to further the interests of other creditors, however, it is not a law enacted for the purpose of regulating the business of insurance." *Id.* —— U.S. at ——, 113 S.Ct. at 2212.

Furthermore, not every action of an insurance company constitutes the business of insurance. Although "every business decision made by an insurance company has some impact on its reliability" and hence, "may redound to the benefit of the policyholders," indirect effects are not within the meaning of the McCarran–Ferguson concept of the "business of insurance." *Id.* Thus, in *Fabe,* a state priority statute was found to have been enacted for the purposes of regulating the business of insurance to the extent that it set forth priorities relating to policyholders and the administration of the insolvency proceeding. But to the extent that it set forth priorities for nonpolicyholder creditors, the state statute did not regulate the business of insurance and a conflicting federal statute was held to pre-empt it. *Id.*

The immediate question before this Court is whether the provision in the March 10, 1987 Liquidation Order giving the Liquidator the power to collect reinsurance proceeds, pursuant to the then-existing state statutory scheme, Vt.Stat.Ann. tit. 8, §§ 3591–3599, was a provision which regulated the business of insurance. The Court holds it was not. The Liquidator acknowledges that the policyholders who asserted claims against Ambassador have been paid, and that this collection action is for reimbursement to Ambassador's estate. As such, it cannot directly affect the relationship between the insurer and its insured. Certainly, the Liquidator's collection of reinsurance proceeds increases the pool of Ambassador's assets, but the record reflects that those assets are to be distributed to nonpolicyholder creditors. Under *Fabe,* the Liquidator's powers to collect these particular proceeds do not have as their purpose the regulation of the business of insurance as that term is construed under the McCarran–Ferguson Act. Accordingly, the circumstances of this case do not implicate the McCarran–Ferguson Act anti-pre-emption provision, and thus, FAA mandates are applicable.

In the alternative, were this Court to find that the Liquidator's power to collect reinsurance proceeds regulated the business of insurance under McCarran–Ferguson, the FAA mandates do not impair that collection effort. Following a Vermont state court decision discussing the relationship between the FAA and the McCarran–Ferguson Act, *see*

*Preziose v. Lumberman's Mutual Cas. Co.,* 152 Vt. 604, 568 A.2d 397 (1989), this Court finds that where a liquidation order, or statute, imposes no requirement that a liquidator proceed in a judicial forum to collect reinsurance proceeds, arbitration of disputes in that collection action do not impede nor impair a liquidator's efforts under the state-created liquidation scheme.

The Liquidator in this case has relied heavily upon caselaw interpreting New York's state scheme for liquidation proceedings involving insolvent insurance companies. *See e.g., Washburn v. Corcoran,* 643 F.Supp. 554 (S.D.N.Y.1986); *Corcoran v. Ardra Ins. Co., Ltd.,* 156 A.D.2d 70, 553 N.Y.S.2d 695 (1990). However, as those cases point out, the New York statutory scheme requires that all disputes involving the insolvent insurer be resolved in a particular state court. An exclusive jurisdiction requirement is not found in the Vermont scheme, and specifically, it is not found in the March 10, 1987 Liquidation Order. On the contrary, that Order gives the Liquidator the power to pursue collection in other jurisdictions and to institute "any and all suits and other legal proceedings." *In re Ambassador Ins. Co., Inc.,* No. S–444–83 Wnc (Wash.Super.Ct. filed March 10, 1987) (Liquidation Order) (Paper 16, Exhibit A at 4–7). This Court interprets "other legal proceedings" to include arbitration proceedings. Accordingly, even if the McCarran–Ferguson Act were to apply to the issues in this case, it does not render the FAA inapplicable.

In conclusion, the Liquidator's arguments opposing a stay are rejected. Pursuant to the Congressional mandate set forth in section 3 of the FAA, defendant's motion for a stay in favor of arbitration is granted.

### Conclusion

Plaintiff's Motion To Remand is hereby DENIED. (Paper 16) Defendant's Motion to Stay is hereby GRANTED. (Paper 11) This action is hereby STAYED in favor of arbitration, pursuant to 9 U.S.C. § 3, until such arbitration has been had in accordance with the terms of the agreements between the parties.