O’Donnell, J.,
concurring in part and dissenting in part.
{¶ 58} The majority has determined that the liquidator is not bound by the arbitration clause contained in the engagement letter between Ernst & Young (“E & Y”) and American Chambers Life Insurance Company (“ACLIC”), because the liquidator does not stand in the shoes of the insolvent insurer and the claims asserted by the liquidator do not arise from the engagement letter.
{¶ 59} I concur in the majority’s opinion to the extent that the liquidator cannot be compelled to arbitrate the preference claim, but because I find that the liquidator stands in the shoes of the insolvent insurer and that the claim alleging that E & Y breached its duties arises from the engagement letter, I respectfully dissent as to that portion of the opinion.

Facts and Procedural History

{¶ 60} In November 1998, E & Y and ACLIC entered into an agreement for E & Y to provide auditing services to ACLIC in exchange for an estimated $46,000. The engagement letter, which memorialized the agreement, stated that E & Y would “audit and report on the consolidated financial statements” of ACLIC and provide an “opinion on the fairness, in all material respects, of the presentation of the financial statements in conformity with generally accepted accounting principles or those prescribed or permitted by the Ohio Insurance Department, respectively.” It also contained a provision that required the arbitration of “[a]ny controversy or claim arising out of or relating to the services covered by this letter.”
{¶ 61} According to the complaint, the superintendent of insurance filed an action in the Franklin County Court of Common Pleas in March 2000, seeking to place ACLIC in rehabilitation pursuant to R.C. 3903.13. In May 2000, the court found ACLIC to be insolvent and issued a final order of liquidation and appointment of a liquidator.
{¶ 62} On April 30, 2003, the superintendent of insurance, as liquidator of ACLIC, filed suit against E & Y, alleging that it had “failed to properly audit *428 ACLIC’s financial statements for the year ending December 31, 1998, in accordance with generally accepted auditing standards, and failed to detect material misstatements in those financial statements.” The complaint stated two claims against E & Y. The first claim alleged, “E & Y negligently failed to perform its duties as the independent certified public accountant retained to conduct the audit of ACLIC’s December 31, 1998, Annual Statement, thus breaching the duties owed. * * * As a direct and proximate result of E & Y’s breach of its duties, ACLIC as well as its policyholders, creditors and the public suffered substantial harm and injury.” The second claim alleged that E & Y received preferential or fraudulent payments of more than $25,000, which the liquidator asserted the right to recover pursuant to R.C. 3903.28(A) or 3903.26.
{¶ 63} E & Y moved to dismiss or stay the proceedings and compel arbitration based on the arbitration provision in the engagement letter. The liquidator opposed E & Y’s motion, asserting that because the claims arose from E & Y’s breach of its duties pursuant to Ohio law and not the engagement letter, arbitration could not be compelled. The trial court denied E & Y’s motion, and the court of appeals affirmed.

Law and Analysis

{¶ 64} In Hudson v. Petrosurance, 127 Ohio St.3d 54, 2010-Ohio-4505, 936 N.E.2d 481, ¶ 16, this court recognized, “The Liquidation Act sets forth a comprehensive framework governing the liquidation of insurance companies operating in Ohio. The purpose of the act is to protect the interests of insureds, claimants, creditors, and the public generally, and the provisions of the act are to be liberally construed to effectuate this purpose. See R.C. 3903.02(C) and (D).”
{¶ 65} If the superintendent of insurance determines that an insurer has become insolvent, R.C. 3903.17 authorizes the superintendent to file a complaint in the court of common pleas for an order of liquidation. Upon the court’s issuance of such an order, the superintendent, acting as liquidator, takes possession of the assets of the insurer and is “vested by operation of law with the title to all of the property, contracts, and rights of action and all of the books and records of the insurer ordered liquidated, wherever located, as of the entry of the final order of liquidation.” R.C. 3903.18(A).
{¶ 66} The statutory powers of the liquidator are enumerated in R.C. 3903.21 and include the authority to “[e]nter into such contracts as are necessary to carry out the order to liquidate, and to affirm or disavow any contracts to which the insurer is a party.” R.C. 3903.21(A)(11). The statute also enables the liquidator to “prosecute and to commence in the name of the insurer or in his own name any and all suits and other legal proceedings, in this state or elsewhere,” and, upon dissolution pursuant to R.C. 3903.20, “apply to any court in this state or elsewhere for leave to substitute himself for the insurer as plaintiff.” R.C. *429 3903.21(A)(12). The statute further authorizes the liquidator to “[pjrosecute any action which may exist in behalf of the creditors, members, policyholders, or shareholders of the insurer against any officer of the insurer or any other person.” R.C. 3903.21(A)(13).
{¶ 67} By taking possession of and title to the assets and contracts of the insolvent insurer, the liquidator succeeds to the insurer’s property and interests and is, therefore, in privity with the insolvent insurer. Cf. Morris v. Jones (1947), 329 U.S. 545, 550, 67 S.Ct. 451, 91 L.Ed. 488 (“Nor is there any lack of privity between Chicago Lloyds and the Illinois liquidator. There is no difference in the cause of action, whether Chicago Lloyds or the liquidator is sued” [citations omitted]); Whitehead v. Gen. Tel. Co. (1969), 20 Ohio St.2d 108, 49 O.O.2d 435, 254 N.E.2d 10, paragraph four of the syllabus, overruled on other grounds, Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, 653 N.E.2d 226 (“Generally, a person is in privity with another if he succeeds to an estate or an interest formerly held by another”).
{¶ 68} When a liquidator prosecutes or commences an action on behalf of the insolvent insurer or its creditors, members, policyholders, or shareholders, seeking to recover their assets or protect or enforce their rights, the liquidator stands in the shoes of the insolvent insurer. E.g., Hudson v. Petrosurance, 10th Dist. No. 08AP-1030, 2009-Ohio-4307, 2009 WL 2596962, ¶ 39, and cases cited therein; Bennett v. Liberty Natl. Fire Ins. Co. (C.A.9 1992), 968 F.2d 969, 972; Costle v. Fremont Indemn. Co. (D.Vt.1993), 839 F.Supp. 265, 272; Foster v. Monsour Med. Found. (Pa.Commw.1995), 667 A.2d 18, 20; Reider v. Arthur Andersen, L.L.P. (Conn.Super.2001), 47 Conn.Supp. 202, 205, 784 A.2d 464.
The first claim against E & Y
{¶ 69} The liquidator’s first claim alleges that E & Y negligently rendered auditing services, breaching the duties it owed to ACLIC. The engagement letter contractually obligated E & Y to render auditing services to ACLIC and set forth E & Y’s responsibilities and duties. The arbitration provision contained in the engagement letter required the parties to arbitrate “[a]ny controversy or claim arising out of or relating to the services covered by this letter.” The liquidator, however, asserts that this claim does not arise out of the engagement letter but, rather, that it arises out of E & Y’s failure to perform its obligations as required by Ohio law.
{¶ 70} In Academy of Medicine of Cincinnati v. Aetna Health, Inc., 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, ¶ 18, this court held that a provision that mandates the arbitration of claims or controversies “arising out of or relating to” the contract is considered a broad clause, encompassing any dispute arising out of the business relationship. We further explained, “Arbitration is not limited to claims alleging a breach of contract, and creative pleading of claims as *430 something other than contractual cannot overcome a broad arbitration provision. The overarching issue is whether the parties agreed to arbitrate the issue.” Id. at ¶ 19.
{¶ 71} Here, the liquidator is a successor in interest to, and in privity with, ACLIC and is therefore bound by ACLIC’s agreement with E & Y. This is the type of claim that ACLIC could directly pursue if it were not in liquidation. By prosecuting such a claim, the liquidator stands in ACLIC’s shoes and is bound by its agreement to arbitrate. Cf. Reider, 47 Conn.Supp. at 205, 784 A.2d 464 (liquidator stands in the shoes of the insolvent insurer when prosecuting a claim the insurer could have pursued were it not in liquidation). The arbitration provision contained in the engagement letter is a broad clause, and this claim involves an issue that falls within its scope. Accordingly, the liquidator is bound by ACLIC’s agreement to arbitrate.
{¶ 72} E & Y rendered auditing services to ACLIC only by virtue of its agreement with ACLIC, and the liquidator’s claim alleging that E & Y negligently performed its duties necessarily implicates the engagement letter. The liquidator attempts to create distance from the engagement letter by asserting that this claim arose from E & Y’s breach of its duties pursuant to Ohio law. The duties imposed by Ohio law, however, are the same duties set forth in the engagement letter. And, as asserted, the claim merely alleges that E & Y breached its duties; it does not identify the predicate source of those duties, let alone rule out the engagement letter as being that source.
{¶ 73} The plain language of R.C. 3903.21(A)(11) permits the liquidator to disavow contracts as a whole, not provisions of a contract. See Fed. Deposit Ins. Co. v. Ernst & Young, L.L.P. (N.D.Ill.2003), 256 F.Supp.2d 798, 805 (construing an analogous federal statute that permits a receiver to repudiate “any contract or lease” to allow only the repudiation of a contract as a whole and not “those provisions of a contract with which [the receiver] is dissatisfied”). Thus, the liquidator cannot prosecute an action for breach of contract or one involving a contract on the authority conferred in R.C. 3903.21(A)(12) or (13) and yet seek to escape arbitration by disavowing an arbitration provision contained in that contract pursuant to R.C. 3903.21(A)(11). Cf. Bennett, 968 F.2d 969; Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc. (C.A.3 1989), 885 F.2d 1149; Costle, 839 F.Supp. at 272 (“if a liquidator seeks to enforce an insolvent company’s rights under a contract, she must also suffer that company’s contractual liabilities”); Koken v. Cologne Reinsurance, Ltd. (D.C.Pa.1999), 34 F.Supp.2d 240; Foster v. Philadelphia Mfrs. (1991), 140 Pa.Commw. 186, 592 A.2d 131.
{¶ 74} Because this is a case in which the liquidator brought suit on behalf of an insolvent insurer and its creditors, shareholders, and policyholders against a third party for its alleged failure to perform auditing services rendered pursuant *431 to a contract, the liquidator necessarily stands in the shoes of the insolvent insurer and cannot assert a claim that arises from and is intertwined with a contract while at the same time disavowing a provision in that contract requiring arbitration.
{¶ 75} The majority determines that the liquidator does not stand in the shoes of the insolvent insurer as a successor in interest and is not bound by the arbitration provision, relying primarily on Equal Emp. Opportunity Comm. v. Waffle House (2002), 534 U.S. 279, 122 S.Ct. 754, 151 L.Ed.2d 755, to support its determination. The question in Waffle House involved “whether an agreement between an employer and an employee to arbitrate employment-related disputes bars the Equal Employment Opportunity Commission (EEOC) from pursuing victim-specific judicial relief, such as backpay, reinstatement, and damages, in an enforcement action alleging that the employer has violated Title I of the Americans with Disabilities Act of 1990(ADA), 104 Stat. 328, 42 U.S.C. § 12101 et seq. (1994 ed. and Supp. V).” Id. at 282. The court held that the employee’s agreement to arbitrate did not bind the EEOC from exercising the enforcement authority granted it by Congress, and the “provisions of Title VII defining the EEOC’s authority” served as the predicate for its decision. Id. at 285-286. The court explained that “[t]o hold otherwise would undermine the detailed enforcement scheme created by Congress [for the EEOC] * * Id. at 296.
{¶ 76} The majority’s reliance on Waffle House is misplaced because that case is readily distinguishable. While on its face the case involves the same issues, i.e., whether a nonsignatory to an arbitration agreement can be compelled to arbitrate, the decision in Waffle House turned on the complex federal statutory framework of the EEOC, which is not analogous to the statutory scheme and purpose of R.C. Chapter 3903. In addition, nothing in Waffle House indicates that its holding applies outside the scope of employment disputes involving the EEOC. For these reasons, Waffle House cannot be considered as having precedential value regarding the issue before this court. Cf. Webster v. Fall (1925), 266 U.S. 507, 511, 45 S.Ct. 148, 69 L.Ed. 411 (“Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents”).
{¶ 77} Moreover, in rejecting Waffle House’s argument that the EEOC stood in the shoes of the employee, the court noted that the EEOC did not sue in a wholly derivative capacity. Unlike the EEOC, however, the liquidator, as established by the allegations in the complaint, brought suit against E & Y in a derivative capacity; the first paragraph of the complaint provides, “As the Liquidator of ACLIC, the Superintendent is empowered, pursuant to Sections *432 3903.21(A)(12) and (13) of the Ohio Revised Code, to commence and/or prosecute actions on behalf of its creditors, shareholders and/or policyholders.” (Emphasis added.) Additionally, the liquidator alleged that jurisdiction and venue were proper because the claims “against each defendant arise, from that defendant’s transaction of business in this state, contracting to supply services in this State, causing tortious injury by an act or omission in this state, and/or causing tortious injury in this state by an act or omission outside this state.” Thus, the allegations in the complaint, coupled with the role of the liquidator pursuant to R.C. Chapter 3903, further distinguish this case from Waffle House.
{¶ 78} Even if the liquidator did not stand in ACLIC’s shoes, the liquidator is still bound to arbitrate this claim. The majority determines that this claim does not arise from the engagement letter because it does not seek a declaration of ACLIC’s rights and obligations under the engagement letter, and it arises from the liquidator’s statutory duties, which exist independently of the engagement letter. As previously explained, however, the duties imposed by Ohio law that E & Y allegedly failed to perform are the same as those set forth in the engagement letter, and whether cast in tort or contract, the issue is one that falls within the broad scope of the arbitration provision. It also bears repeating that the claim alleges that ACLIC “retained” E & Y to conduct its audit and that retention occurred only because of the engagement letter. Moreover, although the liquidator may be empowered by statute to assert this claim, the basis for the claim is E & Y’s alleged negligence, which arose from the services it rendered pursuant to the engagement letter. In fact, the complaint alleges the foregoing to establish venue and jurisdiction. Thus, because this claim arises from the engagement letter, the arbitration provision is enforceable against the liquidator.
{¶ 79} Accordingly, I would hold that the liquidator is bound by the engagement letter to arbitrate this claim because the liquidator, as a successor in interest to ACLIC, stands in its shoes, the claim is one that ACLIC could itself prosecute were it not in liquidation, and the claim arises from the engagement letter. Additionally, equitable-estoppel considerations also operate to compel arbitration of this claim.
The second claim against E & Y
{¶ 80} This claim seeks to recover the fee paid by ACLIC to E & Y for the auditing services rendered. And unlike the first claim asserted by the liquidator against E & Y, this claim is expressly premised upon R.C. 3903.28(A) and 3903.26. The majority correctly concludes that preference claims arise only by virtue of statute and can be asserted only by the liquidator. Courts from other jurisdictions are in accord with that view. See, e.g., Grode v. Mut. Fire, Marine & Inland Ins. Co. (C.A.3 1993), 8 F.3d 953; Pine Top Ins. Co. v. Republic W. Ins. Co. (N.D.Ill.1990), 123 B.R. 277, 285; Hays & Co., 885 F.2d at 1155 (nonsignatory *433 liquidator could be compelled to arbitrate claims that were derivative of the debtor but not a fraudulent-transfer claim brought on behalf of the debtor’s creditors); Amcomp Preferred Ins. Co. v. Koken (Fla.App.2005), 916 So.2d 986 (liquidator not compelled to arbitrate claim to recover preferential payments). Accordingly, I concur in the majority’s decision that the liquidator cannot be compelled to arbitrate this claim.
Michael DeWine, Attorney General, Alexandra T. Schimmer, Chief Deputy Solicitor General, Stephen P. Carney, Deputy Solicitor, and Thaddeus H. Driscoll, Assistant Solicitor; and Kegler, Brown, Hill & Ritter Co., L.P.A., and Melvin D. Weinstein, for appellee.
Squire, Sanders & Dempsey, L.L.P., John R. Gall, and Aneca E. Lasley; and Mayer Brown, L.L.P., Stanley J. Parzen, and James C. Schroeder, for appellant.

Conclusion

{¶ 81} Based on the foregoing, it is my position that the liquidator is bound by the arbitration provision to arbitrate the claim alleging that E & Y breached its duties but cannot be compelled to arbitrate the preference claim. Accordingly, I would affirm in part and reverse in part the judgment of the court of appeals and remand the matter, ordering the case stayed pending arbitration of the liquidator’s first claim against E & Y.
Cupp, J., concurs in the foregoing opinion.